# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | |
|---|---|
| LEANE SCHERER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED **Plaintiff,** | ) ) ) ) |
| **v.** | ) ) Civil Action No. <u>1:22cv258 H</u>SO-BWR ) |
| MGM RESORTS INTERNATIONAL | ) ) |
| **Defendant.** | ) ) ) |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Leane Scherer, individually and on behalf of all others similarly situated, who respectfully brings this action seeking judgment for damages against Defendant MGM Resorts International.

Casino operators enter into hundreds of thousands of transactions a day. When a casino starts taxing its players by refusing to refund cash change, it racks up millions of dollars in profits. Defendant MGM Resorts International is liable to thousands of its casino players for short-changing them.

## PARTIES

1.

Plaintiff Leane Scherer is an individual of the full age of majority domiciled in New Orleans, Louisiana.

Defendant MGM Resorts International is a Delaware corporation operating the following casino properties in the United States: Aria; Bellagio; Delano Las Vegas; Excalibur; Luxor;

Mandalay Bay; MGM Grand Las Vegas; New York, New York; Nomad; Park MGM; Mirage; Vdara; Gold Strike MGM Grand Detroit; MGM National Harbor; MGM Springfield; and Borgata. In Mississippi, MGM Resorts International operates the Beau Rivage in Biloxi, MS.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332. Scherer is a citizen of Louisiana because she is domiciled in New Orleans, Louisiana. Defendant is a citizen of Delaware and Nevada because it is incorporated in Delaware and its principal place of business is in located at 3600 Las Vegas Blvd. South Las Vegas, NV 89109. The amount in controversy exceeds $75,000, as Defendant has short-changed its players millions of dollars.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims in this complaint occurred in Biloxi, Mississippi within this District and Division.

MGM Resorts International may be served with process within this District through its registered agent: Corporation Service Company, 109 Executive Drive, Suite 3, Madison, MS 39110-8497.

## Class Definition

3.

The Class that Plaintiff seeks to represent consists of: "all visitors to a casino owned or operated by Defendant between September 19, 2012 and present who were deprived of their change by Defendant."

## FACTS

4.

Defendant is a casino operator. The casino locations it owns or operates are hereafter referred to as the "Casinos." Every day, hundreds of thousands of people enter Defendant's Casinos and gamble. They give the Casino their hard-earned money for a chance to win more money. The concept has existed for hundreds of years and is understood across the globe. The key to this contract of luck is the consistent application of agreed-upon rules and both sides honoring their debts.

The Casinos set the rules, and the players agree to those rules when they change their money, spin the wheel, roll the dice, or ante up. The Casinos are ensured their winnings because the games are operated on a cash-on-the-barrel basis. The players are supposed to be ensured their winnings because the Casinos are highly regulated and follow strict rules in order to preserve the public trust and their right to operate. The Casinos have broken those widely understood and apparent rules, have violated the public trust, and are liable to the class members.

5.

The Casinos have been taxing their players by manipulating the cash-out system employed by their electronic gaming systems (hereafter "Slot Machines").

6.

When a player decides to play a Slot Machine at a Casino, she pays for credits with the machine via either cash or credit card. For example, on a 25-cent machine, a 20-dollar bill will buy 80 credits. By pressing a button or pulling a lever, the player then chances one or more of those credits on the "spin" or chance that the machine generates a winning combination. If the Slot Machine generates a winning combination, the credit count increases, if not, the credit count

decreases. The player repeats this process as much as she cares to gamble. Sometimes the player

runs out of credit and has essentially lost her money.  Other times, for whatever reason, the player

decides to cease playing while there are still "credits" on the Slot Machine. That is where the issue

herein arises.

7.

A player's decision to cease play before she has lost all of her money is commonly referred

to as making the decision to "cash out." Cashing out is the conversion of the Slot Machine credits,

back into U.S. currency.

8.

When a player wishes to cash out, on the overwhelming majority of the Casinos' machines,

she presses a button or display marked "Cash Out." In early generations of slot machines, coins

would be dispensed at that point. In today's Slot Machines, instead, the machine automatically

generates a Gaming Voucher that reflects and represents the amount owed by the Casino to the

player.

9.

The Gaming Vouchers generated by Defendants are all very similar. They bear a scannable

barcode, the name of the casino establishment, the dollar amount owed, and several markings used

either to instruct the player or assist the Casino in tracking vouchers.

10.

The Gaming Vouchers also bear similar language on their reverse side. They reflect that

the Gaming Voucher is a bearer instrument and that the Casino is not liable for lost or stolen tickets.

The Gaming Voucher further states that "This ticket has no value outside Casino for any monetary

purpose and may not be used at the Casino for any goods or services other than wagering activities

or redemption for value in accordance with its terms." The Gaming Voucher goes on to shift

liability for issues with the voucher to the player. The Gaming Voucher goes on to state that

"Tickets must be cashed in person at the Casino."

11.

Since the adoption of electronic Slot Machines, these Gaming Vouchers have been used as

a convenience for the Casinos; they do not have to stock each machine with cash and can instead

stock a few automatic cash-out machines ("Kiosks"). For decades, players would insert a Gaming

Voucher into the Kiosk at the Casinos and most other casinos, and the Kiosk would pay them in

exact change, in cash.

12.

During the COVID-19 pandemic, the Casinos allegedly grappled with a coin shortage.

Many similarly situated businesses posted signs informing customers that they were unable to pay

exact change due to the shortage. In fact, many of the Defendant Casinos' competitors adopted

responsible practices to notify players of the inability to pay change. For example, the Kiosk at the

Wynn in Las Vegas bears a sticker that says "Machine only dispenses cash, ticket will print for

change. Please take ticket to the cashier to redeem." Defendant's Casinos herein were far less

forthcoming.

13.

For the last few years, Defendants have essentially been keeping the change off of hundreds

of thousands of Gaming Vouchers, essentially robbing their customers a few cents at a time, on

millions of transactions.

14.

When a player inserts a Gaming Voucher into a Kiosk at one of Defendants' establishments, the Kiosk rounds down to the nearest dollar and pays that amount in cash. The Kiosk then generates a TRU Ticket that represents the amount of change that was not paid out. For example, if a player inserts a Gaming Voucher for $1.35, the Kiosk pays a single dollar and generates a TRU Ticket for the balance of 35 cents. That TRU Ticket is more often than not a vehicle for converting players' funds into Casino funds.

15.

The TRU Ticket is not cash and has no value outside of the casino. Upon information and belief, the TRU Ticket can only be cashed at the main cashier's window, commonly referred to as the casino "Cage."

16.

There are no signs posted saying that Defendants do not pay change at the Kiosks. There is no notice on the TRU Ticket that it can only be cashed at the Cage. In fact, the TRU Ticket says:

> Ticket VOID after 30 days and will not be cashed. Must be redeemed in person. This ticket is a bearer instrument, meaning the person who possesses it is presumed to be entitled to cash it. The Casino indicated on this ticket is not responsible for lost or stolen tickets. The player is responsible for checking this ticket for accuracy, including the date and amounts shown, and must immediately notify an attendant of any error. Tickets are void if illegible, altered, counterfeit, incomplete, produced in error, or fail any validation testing. The Casino indicated on this ticket shall not be responsible for the issuance, validation, or payment of lost, stolen, illegible, altered, counterfeit, incomplete, erroneous, invalid, or multiple tickets. The Casino indicated on this ticket shall be discharged from any and all liability upon payment of any claim arising from the redemption of the first ticket presented with a valid bar code. The Casino indicated on this ticket reserves the right to withhold validation and payment pending a determination whether the ticket has been stolen or lost. Ticket valid only at Casino indicated on this ticket.

17.

At some of the Casinos, the Kiosk allows a player to "donate" her change to a non-profit controlled by Defendant or to forfeit the change. This has the same eventual effect of depriving the player of her change.

18.

The Casinos fail to put an average player on reasonable notice that the TRU Ticket can *only* be converted into cash at the Cage.

19.

On June 14, 2022, Plaintiff checked into the Beau Rivage Resort and Casino, a property owned and operated by Defendant.

20.

Plaintiff chose to play the penny slot machine on the casino floor at the Beau Rivage. She inserted $40.00 and played for a while. When she no longer wished to play, she pushed the "Cash Out" button on the machine and received a Gaming Voucher in the amount of $18.19.

21.

Plaintiff took the Gaming Voucher to the Kiosk and cashed out. The Kiosk paid her $18.00 and generated a TRU Ticket in the amount of $0.19.

22.

Unaware that the TRU Ticket could be redeemed at the cage, Plaintiff left the Casino, incurring damages after the ticket expired 30 days later.

23.

On the same day, Plaintiff visited other casinos not operated by Defendant where she was paid exact change at the kiosk.

24.

Upon information and belief, Plaintiff is similarly situated with hundreds of thousands of Casino patrons who have been deprived, little by little, of millions of dollars since Defendant's adoption of its no-change policy.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

25.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

26.

When Plaintiffs converted their funds into credits, they accepted the offer of the Casino to enter into a contract whereby the Plaintiffs could risk their funds in a game of luck and that at the end of the gaming, the players would be able to cash out their funds.

27.

By concealing the sole method available for cashing out a TRU Ticket or compelling a "donation" of change, the Casinos breached this contract, prohibiting the Plaintiffs from cashing out their gaming credits as originally agreed.

## SECOND CAUSE OF ACTION – CONVERSION

28.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

29.

By depriving Plaintiffs of a way to exchange their gaming credits for cash, the Casinos took possession of and dominion over Plaintiffs' property in derogation of their rights.

30.

Plaintiffs were correspondingly damaged in the amounts converted.

## <u>ALTERNATIVE CAUSE OF ACTION – UNJUST ENRICHMENT</u>

31.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

32.

In the alternative, Defendant is in possession of money which in good conscience and justice it should not retain but should deliver to Plaintiffs.

33.

In good conscience, the funds retained by Defendant ought to belong to Plaintiffs.

## <u>ALTERNATIVE CAUSE OF ACTION – QUANTUM MERUIT</u>

34.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

35.

In the alternative, Defendant is liable under a theory of quantum meruit. Valuable materials (funds) were rendered; to Defendant; they were accepted, used, and enjoyed by Defendant; and Defendant was reasonably notified that Plaintiffs expected to be paid.

WHEREFORE, Leane Scherer prays that summons be issued and served on Defendant, that hearing be set on class certification as required by law, that this matter be certified as a class action, and after due proceedings herein, there be judgment in favor of Plaintiff and all Class Members and against Defendant, including attorney's fees and costs.

[signature on following page]

Respectfully submitted:

**STERNBERG, NACCARI & WHITE, LLC**

**/s/ Ryan J. Richmond**
RYAN J. RICHMOND (MSBN 106198)
251 Florida Street, Suite 203
Baton Rouge, LA 70801-1703
Tel.: (225) 412-3667
Fax: (225) 286-3046
ryan@snw.law

     AND

SCOTT L. STERNBERG, La Bar No. 33390[1]
M. SUZANNE MONTERO, La. Bar No. 21361[2]
KEITH J. NACCARI La. Bar No. 36603[3]
GRAHAM H. WILLIAMS, La. Bar No. 36731[4]
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Fax: 504.534.8961
scott@snw.law | suzy@snw.lw | keith@snw.law |
graham@snw.law

     AND

LAWRENCE J. CENTOLA, III La. Bar No 27402[5]
JASON Z. LANDRY La. Bar No 33932[6]
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
    Email:    ljc@mbfirm.com
              jzl@mbfirm.com

***Counsel for Plaintiff***

---

[1] Motion for admission *pro hac vice* to be filed.

[2] Motion for admission *pro hac vice* to be filed.

[3] Motion for admission *pro hac vice* to be filed.

[4] Motion for admission *pro hac vice* to be filed.

[5] Motion for admission *pro hac vice* to be filed.

[6] Motion for admission *pro hac vice* to be filed.

**<u>PLEASE ISSUE SUMMONS TO:</u>**

MGM Resorts International
Through its Registered Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

      AND

MGM Resorts International
Through its Registered Agent
CORPORATION SERVICE COMPANY
109 Executive Drive, Suite 3
Madison, MS 39110