IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LEANE SCHERER, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED                                                                 PLAINTIFF

VS.                                             CIVIL ACTION NO.: 1:22CV258-HSO-BWR

MGM RESORTS INTERNATIONAL                                                  DEFENDANT

---

**DEFENDANT MGM RESORTS INTERNATIONAL'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS**

---

## I.  INTRODUCTION

Plaintiff Leane Scherer alleges she lost 19 cents when she cashed out after gambling at a Beau Rivage casino slot machine.  Plaintiff received a paper voucher for $18.19 and redeemed the voucher at an automated kiosk, which paid her $18.00 in cash and generated a second paper voucher, called a Tru Ticket, redeemable at the casino cage, for 19 cents.  Plaintiff insists she did not know how to cash the Tru Ticket, and thus "left the [Beau Rivage], incurring damages after the ticket expired 30 days later."  Complaint ("Comp.") ¶ 22.  Plaintiff, or rather her class action lawyers, imagine that MGM casino patrons throughout the nation have been collectively "deprived" of millions of dollars in this fashion since MGM began using the Tru Ticket system, which is simply false.  *Id.* ¶ 13.

The other bad news for Plaintiffs is that the practices at MGM casinos with regard to the Tru Tickets vary widely, making the issue particularly unsuitable for class certification.  And the vast majority of expired Tru Ticket funds at MGM's various casinos escheat to the states every

year. In short, Plaintiff's lawyers' notion of a diabolical national scheme concocted by MGM to steal its customers' loose change represents a figment of their admittedly creative imaginations.

The good news is that Plaintiffs will not have to waste their time pursuing this meritless case because Mississippi law bars their class action as a matter of law on several grounds.

*First*, the Court has no jurisdiction over Plaintiff's case. The Mississippi Gaming Control Act, Miss. Code Ann. §§ 75-76-1 et seq., grants the Mississippi Gaming Commission exclusive jurisdiction over patron claims that involve "gaming debt." *Ameristar Casino Vicksburg, Inc. v. Duckworth*, 990 So. 2d 758, 759 (Miss. 2008). Because the Mississippi Supreme Court has already expressly determined that vouchers qualify as "gaming debts," *Shriver v. Boyd Biloxi LLC*, 281 So. 3d 63, 69 (Miss. 2019), only the Gaming Commission has jurisdiction to hear Plaintiff's claims. *Grand Casino Tunica v. Shindler*, 772 So. 2d 1036, 1040 (Miss. 2000) ("all gaming matters [are] the exclusive jurisdiction of the Mississippi Gaming Commission."). No state court can hear them, nor can this Court sitting in diversity. *See, e.g.*, *Crider v. Zurich Ins. Co.*, 348 F.2d 211, 214–15 (5th Cir. 1965) (where state court "would hold that they were without jurisdiction of the subject matter of the cause of action" federal court sitting in diversity "must reach the same result"). Because nothing can cure this jurisdictional defect, the Court should dismiss Plaintiff's Complaint with prejudice.

*Second*, in Mississippi, "claims based upon any form of gambling are void and unenforceable at common law." *Shindler*, 772 So. 2d at 1038. None of Plaintiff's causes of action are enforceable in a Mississippi state court, so none are enforceable in this Court sitting in diversity, and, again, they should be dismissed with prejudice.

*Third*, Plaintiff's allegations fail to state a claim in any case. Plaintiff asserts MGM breached an implied in fact contract that Plaintiff would be able to cash out her Tru Ticket, but

2

no one disputes that Plaintiff *was* able to cash out the Tru Ticket at the casino cage. As expressly pled in the Complaint, no breach of contract occurred. Instead, Plaintiff seems to be suggesting that an unalleged implied term in her contract with MGM stated that if she was so unfamiliar with casinos that she did not realize the Tru Ticket could be cashed at a cashier's window in the cage, MGM would never require her to take the step of asking MGM casino personnel where to cash the Tru Ticket, and would instead post signage or other information explicitly telling Plaintiff to go to the cage. The Complaint, however, contains no allegation supporting the existence of such an implied contract between Plaintiff and the Beau Rivage, and Plaintiff's claim again fails as a matter of law.

Plaintiff's conversion claim is also defective. Conversion requires the defendant to have taken dominion over Plaintiff's property in defiance of her rights, or a withholding of Plaintiff's property under a claim of right. *Community Bank v. Courtney*, 884 So. 2d 767, 773-74 (Miss. 2004). But the Complaint alleges no such thing. To the contrary, the Complaint admits that the Beau Rivage casino *would have* cashed out Plaintiff's Tru Ticket had she only presented it. Plaintiff apparently did not care enough about the 19 cents to find out how to do that. Because Plaintiff fails to allege the elements of conversion, her claim should be dismissed.

Plaintiff's unjust enrichment claim must also be dismissed because (1) Mississippi law requires dismissal of unjust enrichment claims where, as here, Plaintiff alleges the existence of an actual contract, *Multiplan, Inc. v. Holland*, No. 1:14CV315-LG-RHW, 2016 WL 3983669, at *3 (S.D. Miss., July 7, 2016); and (2) Plaintiff has offered nothing in her Complaint to support her conclusory allegation that the law should imply in that contract a term that she need not ask anyone working at the casino how to redeem her Tru Ticket if she did not know.

Finally, this Court should strike Plaintiff's proposed class definition as unascertainable. Plaintiff's definition simply assumes that *everyone* who played the slot machines in an MGM casino did not know how to cash a Tru Ticket. But that is patently ridiculous: clearly, some patrons familiar with casinos either knew or correctly assumed that Tru Tickets could be cashed at the cage and cashed them there; others no doubt knew, but didn't bother to cash the Tru Tickets for loose change, and others simply donated the change vouchers, as permitted at some casinos. Yet only those patrons who wanted to cash their Tru Tickets, but did not know how, could conceivably qualify as members of Plaintiff's purported class. Because determining class membership would require an investigation of each potential class members' knowledge and state of mind, Plaintiff's class is unascertainable and uncertifiable. *See, e.g.*, 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760 (4th ed.) ("a class definition that requires inquiry into the state of mind or knowledge of its members will not be allowed to proceed under Rule 23.").

In sum, Plaintiff's Complaint suffers from a dizzying array of fatal infirmities, starting with a lack of jurisdiction and ending with a failure to state a claim on the merits. MGM respectfully requests that this Court dismiss it with prejudice.

## II.     PERTINENT FACTS[1]

Defendant MGM Resorts International is a casino operator with properties across the country, including the Beau Rivage in Biloxi Mississippi. Comp. ¶ 1. The Beau Rivage holds a

---

[1] Because this is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), MGM generally confines itself to facts alleged in the Complaint, despite their frequent inaccuracy.

license to operate from the Mississippi Gaming Commission.[2] The named Plaintiff, Leane Scherer, is a citizen of Louisiana who gambled at the Beau Rivage. *Id.* ¶¶ 1, 19–20.

When a patron decides to play a slot machine at an MGM casino, she pays for credits at the machine using cash. By pressing a button or pulling a lever, the player then chances one or more of those credits on the "spin," or chance that the machine generates a winning combination. *Id.* ¶ 6. The player repeats this process as long as she cares to gamble.

If a player decides to stop gambling before she runs out of credits, in colloquial terms, she elects to "cash out." In other words, she converts her slot machine credits back into US currency. *Id.* ¶ 7. In general, to cash out, a player presses a button or screen prompt on the slot machine. The machine then generates a voucher that reflects the remaining slot machine credits that the casino owes to the player. *Id.* ¶ 8.

Various kiosks in the casino operate to convert the voucher into cash automatically upon the player's insertion of the voucher into a kiosk. Because, among other reasons, the Covid-19 pandemic created a coin shortage, the kiosks now round down to the nearest dollar and pay that amount in cash. The kiosk then generates a Cashout Voucher, or Tru Ticket, memorializing the amount of change under a dollar that the kiosk did not pay out in coins. *Id.* ¶¶ 12, 14.

---

[2] As Mississippi's regulatory agency for the licensure and operation of casinos, the Mississippi Gaming Commission maintains a database of all casino licensees. The Mississippi Gaming Commission publishes a list of all casino licensees on its website, and of course, Beau Rivage is identified as a casino licensee. *See* Mississippi Gaming Commission, https://www.msgamingcommission.com/reports/other (last visited Dec. 15, 2022). A copy of the Mississippi Gaming Commission's website and list of casino licensee (as of October 3, 2022) is attached to Defendant's Motion as **Exhibit "A"**.

The Court can take judicial notice of Beau Rivage's status as a casino licensee, because Beau Rivage's licensee status "is generally known within the trial court's territorial jurisdiction[,]" and the accuracy of the Mississippi Gaming Commission's own publicly available records "cannot reasonably be questioned." *See* Fed. R. Evid. 202(b).

On the back, the Tru Ticket reads that it must be "redeemed in person" and that "the ticket is a bearer instrument, meaning the person who possesses it is presumed to be entitled to cash it." The casino also "reserves the right to withhold . . . payment pending a determination whether the ticket has been stolen or lost." *Id.* ¶ 16. There is no dispute that the Tru Ticket can be converted to cash at the Casino cage. *Id.* ¶ 18; *see* 13 Miss. Admin. Code Pt. 7, R. 9.7(a)–(b) ("Slot Machine Wagering Vouchers are bar coded vouchers created through a cashless wagering system which allows collective hardware, software, communications technology, and other associated equipment to facilitate wagering. The bar coded voucher can be redeemed at the casino cage . . . ."). The Tru Tickets generally expire after a certain number of days, detailed on the voucher.

Plaintiff does not allege that the Beau Rivage casino, cashiers at the cage's windows, or any other employee of the Beau Rivage, refused to redeem her Tru Ticket. Instead, she urges that she was "[u]naware that the Tru Ticket could be redeemed at the cage," and therefore simply left the casino without redeeming her Tru Ticket. Comp. ¶ 22. Plaintiff never asserts that she believed she could *not* redeem the Tru Ticket at the casino, but rather that she did not know where to redeem the ticket, and that the casino did not display adequate signage or other information explaining that the cashiers at the cage would redeem the Tru Tickets. *Id.* ¶ 18. The Complaint contains no allegation that Plaintiff ever inquired of anyone at the casino where she should take the Tru Ticket to redeem it, or that she later called the casino to ask where to redeem the Tru Ticket, or that she ever attempted to redeem the ticket at the cage, or anywhere else. Indeed, it would be hard to imagine anyone displaying less interest in how to redeem the Tru Ticket than Plaintiff in the Complaint at issue.

6

The Complaint purports to identify Plaintiff as the sole class representative of a supposed nationwide class of all persons who visited a casino owned or operated by MGM who were "deprived" of their change by MGM. *Id.* ¶ 3.

## III.     ARGUMENT

### A.     The Mississippi Gaming Commission Has Exclusive Jurisdiction Over Plaintiff's Claims

#### 1.     The Mississippi Gaming Control Act applies to Plaintiff's claims

As a preliminary matter, Mississippi law controls the instant case. Plaintiff concedes that all of the supposed "events or omissions giving rise to the claims in this complaint occurred in Biloxi, Mississippi within this District and Division," at the Beau Rivage Casino. Comp. ¶ 2. Plaintiff voluntarily visited the casino to gamble. *Id.* ¶¶ 19–20.

In 1990, the Mississippi Legislature enacted a detailed jurisdictional, supervisory, and enforcement framework for on-shore Mississippi casinos and their patrons. *See* Miss. Code Ann. §§ 75-76-1, et seq. (the "Mississippi Gaming Control Act" or the "Act"). The Beau Rivage is licensed and supervised by the Mississippi Gaming Commission pursuant to the Mississippi Gaming Control Act. Exh. A.

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). "The Mississippi Supreme Court has . . . made it clear that its conflict of laws jurisprudence will be guided by the considerations outlined in § 6 of the Restatement [(second) of Conflict of Laws]." *Herring Gas Co., Inc. v. Magee*, 22 F.3d 603, 607–08 (5th Cir. 1994). Under section 6, "the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice of law principles." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. Here, the Mississippi Legislature clearly intended the

Mississippi Gaming Control Act to govern all gaming debt disputes between licensed Mississippi casinos and their patrons, whether out of state or not. Moreover, even if the Legislature had not so intended, basic choice of law principles require application of Mississippi law. "[W]hen deciding conflict of law questions, Mississippi has ascribed to the most significant relationship test . . . [, which] focuses on the contacts between the parties and the forum." *Powe v. Roy Anderson Const. Co.*, 910 So. 2d 1197, 1201 (Miss. Ct. App. 2005). Here all the significant relationships—the center of gravity of the case—occurred in Mississippi and concern a licensed Mississippi casino. Therefore, Mississippi law applies.

> **2.  The Complaint Must be Dismissed Because the Mississippi Gaming Commission Has Exclusive Jurisdiction Over Plaintiff's Gaming Dispute**

Mississippi Code Annotated Section 75-76-1, et seq. governs the Court's jurisdiction in this matter. It reads in pertinent part: "A claim by a patron of a licensee for payment of a gaming debt not evidenced by a credit instrument may be resolved by the executive director in accordance with Section 75-76-159 through 75-76-165, inclusive." Miss. Code Ann. § 75–76–157(2). Despite the use of the permissive "may" in the statute's language, the Supreme Court of Mississippi has held that "all gaming matters are the exclusive jurisdiction of the Mississippi Gaming Commission." *Ameristar*, 990 So. 2d at 759 (quoting *Shindler*, 772 So. 2d at 1038) (emphasis added).

In the instant case, Plaintiff alleges breach of contract, conversion, and unjust enrichment/quantum meruit claims based on the same operative facts: that the Beau Rivage failed to redeem the Tru Ticket voucher because it did not explicitly tell Plaintiff to cash the voucher at the cage.

Leaving to one side that Plaintiff's claim is substantively untenable, Mississippi law is settled that Plaintiff's voucher was a gaming debt as the term is used in the Act. *See Shriver*, 281

8

So. 3d at 69 ("[T]he vouchers exist by virtue of the [plaintiffs'] gambling activities . . . . The vouchers qualify as 'gaming debts, and the Mississippi Code Annotated hands the Executive Director [of the Gaming Commission] jurisdiction over disputes on "gaming debts."). Consequently, Plaintiff's complaint constitutes "a claim by a patron of a licensee for payment of a gaming debt," and is thus subject to the exclusive jurisdiction of the Mississippi Gaming Commission. *Id.* 68. In the words of the Mississippi Supreme Court, "the Gaming Commission [is] the *only* body with jurisdiction to hear this matter." *Shindler*, 772 So. 2d at 1040 (emphasis added).

Because governing state law grants exclusive jurisdiction over Plaintiff's claims to the Gaming Commission, it necessarily prevents this Court from hearing those claims, which fail as a matter of law. *See, e.g.*, *Crider*, 348 F.2d at 214–15 (where state court "would hold that they were without jurisdiction of the subject matter of the cause of action" federal court sitting in diversity "must reach the same result"); *Nitsch v. City of El Paso*, 482 F. Supp. 2d 820, 841 (W.D. Tex. 2007) ("a federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state sits [and] should reach the same result as the state courts would reach in deciding the identical issue").[3]

---

[3] Although federal courts often refer to cases in which a state administrative scheme like the Mississippi Gaming Control Act preempts their jurisdiction as involving subject matter jurisdiction, technically, this is probably incorrect. As the Seventh Circuit explained in a similar context:

> The district court . . . ha[s] characterized the question of whether the ICC enjoys exclusive jurisdiction over [the plaintiff's] claims as one of subject-matter jurisdiction. It is not. States do not have the power "to enlarge or contract federal jurisdiction."
>
> * * * *
>
> States do, however, "have the power to prevent the federal court from granting relief in a diversity case by denying the substantive right of action asserted." That

9

This same defect afflicts *any* purported Mississippi class representative or class member; therefore, Plaintiff's claims—and her class action—cannot go forward in this Court or any Mississippi court, and should be dismissed with prejudice. *See Johnson v. City of Dallas, Tex.*, 61 F.3d 442, 445 (5th Cir. 1995) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 292 n.4 (S.D. Miss. 2020) ("Plaintiff brings the Complaint as a class action and seeks to certify a nationwide class of policyholders who have suffered losses due to the measures put in place to stop the spread of COVID-19; however, it cannot do so if Plaintiff is not part of the *class because its individual facts fail to state a claim*" (citing *O'Shea*, 414 US at 494) (emphasis added).).

B. **Plaintiff's Complaint Also Fails To State A Claim**

To avoid dismissal, a complaint must 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Although courts assume the truth of well-pled factual allegations in a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

is because diversity actions "involve rights created by a state, rights which are subject to definition, limitation and, frequently, negation by the state."

*Zahn v. North American Power & Gas, LLC*, 815 F.3d 1082, 1086–87 (7th Cir. 2016) (citations omitted).

It is therefore probably most accurate to say that because of Mississippi state law granting exclusive jurisdiction over Plaintiff's claims to the Mississippi Gaming Commission, Plaintiff fails to state a claim as a matter of law. Fed. R. Civ. P. 12(b)(6).

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### 1. Plaintiff's breach of implied contract claim is unenforceable and fails to allege a breach

Plaintiff's first claim asserts breach of an implied contract. According to Plaintiff, the putative class members and the casinos entered an implied contract "whereby the Plaintiffs could risk their funds in a game of luck and . . . at the end of the gaming, the players would be able to cash out their funds." Comp. ¶ 26. Plaintiff alleges MGM breached the implied contract by "prohibiting the Plaintiffs from cashing out their gaming credits as originally agreed." *Id.* ¶ 27. MGM supposedly accomplished this breach by "concealing" the method for cashing out the ticket—going to a cashier at the casino cage.

Plaintiff's implied contract claim fails as matter of law for two reasons. First, in Mississippi, "claims based upon any form of gambling are void and unenforceable at common law." *Shindler*, 772 So. 2d at 1038. As the Mississippi Supreme Court explained in *Shindler*,

> Before the enactment of the Mississippi Gaming Control Act, casino patrons like [Plaintiff] would have had no forum in which to air their grievances. The Legislature gave the public a right that they had not possessed before, but with this right came the requirement that gaming matters be handled by the Mississippi Gaming Commission. As with the workers' compensation claims, having a special body to examine the issues is only logical; claims are often quite confusing and require a certain amount of specialized knowledge to properly analyze the various situations. In addition to the need for specialized knowledge, public policy dictates that a separate body handle gaming matters so the courts do not become overrun with claims they have neither the time nor information to handle.

*Id.* at 1038; *see* Miss. Code. Ann. § 75-76-157 ("gaming debts . . . are void and unenforceable and do not give rise to any . . . civil cause of action."). In sum, the public policy of this state mandates that Plaintiff's civil claims, including breach of contract, for supposed failure to cash her gaming debt be heard by the Mississippi Gaming Commission, or not at all.

11

PD.40689585.1


Second, one struggles mightily to find an actual breach of contract alleged in the Complaint. "A contract implied in fact is an obligation arising from a mutual agreement and intent to promise, but where the agreement and promise have not been fully expressed in words." *In re Estate of Williams*, 40 So. 3d 1282, 1287 (Miss. Ct. App. 2010) (citations omitted). "In determining whether the parties' conduct implies a contract in fact, their conduct is evaluated from the perspective of a reasonable person, considering all of the attendant circumstances." 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1:5 (4th ed.). Thus, for example, "[a] promise to pay for services rendered without an express contract as to compensation will not be implied in fact where there are no circumstances or conduct warranting the inference of such a promise or where the circumstances or conduct warrant a contrary inference. Such a promise is not implied where the person benefited has said or done nothing from which such a promise may be inferred . . . ." *Bryant v. Stringer*, 183 So. 2d 895, 898 (Miss. 1966) (citation and quotation marks omitted).

Here, Plaintiff alleges she had an implied contract that she would be able to cash out her gaming debts after gambling. There is no dispute that she *was* able to do so at the casino cage. Comp. ¶ 15. Thus, no breach of the implied contract that Plaintiff describes in the Complaint occurred. Instead, Plaintiff suggests, but does not expressly allege, the existence of an unstated implied term in her alleged contract with the Beau Rivage, the breach of which supposedly caused her inability to cash out her gaming debt. The gravamen of Plaintiff's claim is that MGM included a promise in its implied contract with her that if for some reason Plaintiff did not know how to cash out her voucher, she would not have to make any inquiry at the casino to find out, and could instead rely on posted signage to explain how to redeem the ticket.

PD.40689585.1

But there is simply no indication in Plaintiff's Complaint of either party's agreement to such an implied term.  Although it might be best practice to include signage or instructions that expressly detail exactly how to cash the Tru Ticket at the cage, no Mississippi law or regulation requires it, and Plaintiffs fail to allege (nor could they) the elements of an implied contract between Plaintiff and the Beau Rivage to do so.

In addition, the Legislature has expressly granted the Gaming Commission power to adopt regulations which "prescribe the manner in which winnings, compensation from games and gaming devices[] . . . must be computed and reported by the licensee."  Miss. Code Ann. § 75-76-51.  Those regulations include 13 Miss. Admin. Code pt. 7, Ch. 7, R. 9.7(a), which defines a slot machine voucher and states that "[t]he bar coded voucher can be redeemed at the casino cage."  The Commission's rules have the effect of law, "and [the Plaintiff] is presumed to know these rules and regulations when placing a bet with defendants." *Ronca v New York State Racing and Wagering Bd.*, 394 N.Y.S.2d 386, 387 (NY Sup. Ct. 1977).  Indeed, it is a matter of common knowledge among casino patrons, and an appropriate subject for judicial notice, that the cage "functions as the bank of the casino." *Casino Magic v. Nelson*, 958 So. 2d 224, 226 (Miss. Ct. App. 2007).  How it never occurred to Plaintiff to bring her Tru Ticket to the cage, one may well ask, but regardless, it is not a breach of contract.

> 2. **Plaintiff's conversion and unjust enrichment claims fail as a matter of law**

Plaintiff's conversion cause of action has analogous problems to her breach of implied contract claim.  Comp. ¶¶ 28–30.  First, as noted in the prior section, "claims based upon any form of gambling are void and unenforceable at common law." *Shindler*, 772 So. 2d at 1038.

Second, to make out conversion, "there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or

13

exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff." *Courtney*, 884 So. 2d at 773–74; *see id.* at 773 ("there is no conversion *until the title of the lawful owner is made known and resisted*" (citation and quotation marks omitted) (emphasis added)). On the face of the Complaint, no one is taking dominion over Plaintiff's change or resisting Plaintiff's claim of title, which she admittedly never made. The Tru Ticket expressly gives its possessor the right to obtain the change at issue. *See* Comp. ¶ 16 ("This ticket is a bearer instrument, meaning the person who possesses it is presumed to be entitled to cash it."). Again, the Complaint *admits* that Plaintiff could have redeemed the voucher for coins at the cage. *Id.* ¶ 15. Neither the casino nor anyone else withheld "possession under a claim of right or title inconsistent with that of plaintiff." *Courtney*, 884 So. 2d at 773-74. To the contrary, MGM makes clear on the voucher itself that the player "owns" the change. All that may have happened is that Plaintiff did not know how to redeem the voucher, and, perhaps understandably, did not care enough about the loose change at issue to find out. That is not conversion by any stretch of the imagination.

Plaintiffs also assert two "Alternative Cause[s] of Action"— one for Unjust Enrichment, Comp. ¶¶ 31–33, and one for Quantum Meruit, *id.* ¶¶ 34–35. "The measure of recovery is a distinction between quantum meruit and unjust enrichment. Recovery in quantum meruit is measured by the reasonable value of materials or services rendered, while recovery in unjust enrichment is that to which the claimant is equitably entitled." *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987). Although Plaintiff tries to bring her claim within the ambit of quantum meruit, she never alleges that she provided goods or service for which she was not paid, and quantum meruit recovery is therefore unavailable.

Unjust enrichment is a "modern designation for the doctrine of 'quasi-contracts' and the basis for an action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co. Inc.*, 342 So. 2d 1308, 1311 (Miss. 1977).

Under Mississippi law, where, as here, a party asserts a breach of contract, her unjust enrichment claim must be dismissed. *Multiplan*, 2016 WL 3983669, at *3. Beyond that, as noted above, MGM never promised—and Plaintiffs do not allege MGM promised—impliedly or expressly—that if Plaintiffs did not already know that the cage is the casino's "bank," and cashes chips, vouchers, and all other gaming debts, then Plaintiffs would never have to ask where to cash the Tru Tickets. Nor has Plaintiff offered any reason in equity and good conscience why such a contract ought to be implied by law, particularly to salvage a right to redeem effectively abandoned by Plaintiff. In other words, on the face of Plaintiffs' own Complaint, the implied contract that Plaintiff now hopes to enforce never existed and was neither implied in fact nor law.

Because the Complaint fails to allege facts supporting either a conversion or unjust enrichment cause of action, those claims fail as a matter of law, both for the named Plaintiff and the Mississippi class, and this Court should dismiss them.

### C. Plaintiffs' Proposed Class Is Not Ascertainable As A Matter of Law, and This Court Should Strike The Complaint's Class Action Allegations

As discussed, Plaintiffs' purported class action fails in Mississippi because this Court has no jurisdiction to hear the class representative's claims, and, in any event, the Court should dismiss those claims as a matter of law under Rule 12(b)(6).

Beyond that, however, Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."

Although Class allegations are generally not tested at the pleadings stage, the Supreme Court has explained that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. See, e.g., *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ( court unable to "see how discovery or for that matter more time would have helped" the plaintiffs strengthen the class allegations); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) ("The Federal Rules provide a mechanism for exercising defective class allegations before discovery.").

This is such a case. Plaintiffs fail to define an ascertainable class and cannot do so. The class definition that the Complaint offers in Paragraph 3: "all visitors to a casino owned or operated by Defendant . . . who were deprived of their change by Defendant," is inconsistent with Plaintiffs' own allegations. Clearly, on the face of the Complaint, no one who visited the casino was "deprived" of their change—everyone got a Tru Ticket change voucher redeemable at the casino cage. Plaintiffs are really trying to certify a class of patrons who visited an MGM casino, got a Tru Ticket, and did not know where to cash it. The Complaint, however, does not suggest that *no one* knew to redeem the Tru Tickets at the cage; or that *no one* inquired of casino personnel how to redeem the Tru Tickets, and found out; or that *no one* decided it was too much bother to redeem the ticket, even though he or she knew how, or just decided to donate the Tru Ticket. Comp. ¶ 17.

Plaintiffs' proposed class is thus a textbook example of a class impermissibly defined by each member's state of mind. To distinguish those potential class members who knew how to

16

redeem the Tru Tickets, but did not bother, on the one hand, from those potential class members who wanted to redeem the tickets, but did not know how and could not figure it out, on the other hand, would require an impermissible investigation of each potential class member's state of mind. *See, e.g.*, 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760 (4th ed.) ("a class definition that requires inquiry into the state of mind or knowledge of its members will not be allowed to proceed under Rule 23"); *Chaffee v. Johnson*, 229 F. Supp. 445, 448 (S.D. Miss. 1964) (class defined with reference to mental state too indefinite to certify). Therefore, Plaintiffs' class allegations should be stricken from the Complaint on the independent ground that the class is not practically ascertainable, as well as the other grounds discussed above.

## IV.    CONCLUSION

WHEREFORE, Defendant, MGM Resorts International, respectfully requests that the Court grant this Motion and enter an order granting dismissal with prejudice.

Respectfully submitted, this the 16th day of December, 2022.

*[Signature Page Follows]*

MGM RESORTS INTERNATIONAL

PHELPS DUNBAR LLP

BY: *s/Drury S. Holland*
James G. Wyly, III, MS Bar 7415
Drury S. Holland, MS Bar 104371
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: jim.wyly@phelps.com
Email: dru.holland@phelps.com

*and*

Bethany W. Kristovich (PHV)
Jonathan E. Altman (PHV)
Munger, Tolles & Olson LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213 683 9292
Email: bethany.kristovich@mto.com
Email: jonathan.altman@mto.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the above and foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*s/Drury S. Holland*

PD.40689585.1